| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------- X<br>MICHAEL KENNEDY,<br><br>                        Plaintiff,<br><br>      - against -<br><br><br><br>THE CITY OF NEW YORK et al.,<br><br>                      Defendants.<br>-------------------------------------------------------------- X | **NOT FOR PUBLICATION**<br><br><br><br><br>**MEMORANDUM & ORDER**<br><br><br>11-CV-1451 (ERK)(SMG) |

KORMAN, J.:

      Plaintiff Michael Kennedy ("Kennedy") was arrested at around 4:45 a.m. on March 26, 2008, in Brooklyn. The arrest report indicates that he was arrested pursuant to various provisions of New York's Vehicle Traffic Law for driving under the influence of alcohol, running a red light, refusing to take a breathalyzer test, and failing to wear his seatbelt. Arrest Report, Ashanti Decl. Ex. I. Officer Carreira testified that he observed plaintiff run a red light and swerve his vehicle, crossing the double yellow line. Carreira Dep., Ashanti Decl. Ex. D, at 38:4–24. After he was pulled over, plaintiff was asked to exit his vehicle and, according to Carreira, was unsteady on his feet, exhibited bloodshot, watery eyes, and smelled of alcohol. *Id.* at 60:10–12. Carreira testified that plaintiff admitted to having four drinks. Kennedy conceded in his deposition and his affidavit that he had "three or four drinks" over the course of his evening prior to the arrest and that he admitted the same to the officers when asked. Kennedy Dep., Dkt. 46-1, at 87:20; Kennedy Aff., Hazan Decl. Ex. 3, at ¶ 5, 27.

      Kennedy was arraigned and charged with several offenses. On March 30, 2011, after he made "many" court appearances, they were dismissed on the ground that he had been denied his

right to a speedy trial under New York law.  Certificate of Disposition Dkt. 2008KN023104, Kennedy Aff. Ex. C.  Kennedy then filed this action against the City and several officers for false arrest, malicious prosecution, and various other causes of action.  After discovery, the defendants filed the instant motion for summary judgment.

## I. False Arrest

Probable cause (or, in the case of the traffic stop, reasonable suspicion) is a complete defense to a claim of false arrest.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  It "requires the arresting officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal citation and quotations omitted).

In this case, there are two events which plaintiff alleges support a claim for false arrest or improper seizure in violation of the Fourth Amendment: the initial traffic stop and the subsequent arrest and confinement.  They will be addressed in order.

### a. The initial stop of plaintiff's vehicle

First, as to the initial stop, a traffic stop entails the seizure of the driver within the meaning of the Fourth Amendment.  *Brendlin v. California*, 551 U.S. 249, 255 (2007) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).  Because stopping of a vehicle for questioning is not so intrusive as to require probable cause, an investigatory stop is justified if officers are aware of "specific articulable facts, together with rational inferences from those facts that reasonably warrant suspicion" that the person to be stopped violated the traffic laws.  *See*, *e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).  The determination of reasonable suspicion draws from "commonsense nontechnical conceptions" and requires consideration of the overall context of the stop to determine if the police officer had a "particularized and

objective basis" for suspecting that the person stopped was engaged in criminal activity, including a violation of the traffic laws. *See Ornelas v. United States*, 517 U.S. 690, 695–96 (1996).

Here, Officer Carreira testified that he stopped plaintiff's vehicle because he observed plaintiff drive through a steady red light and swerve over the double yellow lines on McDonald Avenue. Carreira Dep. at 38:10–24. At his deposition Kennedy was unable to contradict the testimony that he drove through a steady red light. Indeed, he testified that he had no recollection of whether he even encountered any red lights. The relevant portion of the deposition testimony reads as follows:

> Q. At any point in time when you first hit McDonald and where you were pulled over, did you encounter any red lights?
>
> A. I can't say I did and I can't say I didn't.
>
> Q. Do you mean you don't remember?
>
> A. Yes, I don't remember. I don't remember in the sense of when I was going and when I stopped. I can't answer that.

Kennedy Dep. at 101:20–102:2. He also testified that it was "too far back to remember" whether he stopped at any red lights. *Id.* at 102:14–15. Notwithstanding the foregoing deposition testimony, in a later-filed affidavit in opposition to the summary judgment motion, Kennedy alleges definitively that he never ran a solid red light. Kennedy Aff. ¶¶ 13, 17.

Relying on *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969), defendants argue that his affidavit is insufficient to create a genuine issue of material fact because it is materially inconsistent with his deposition testimony. In that case, the Second Circuit held that a party may not submit an affidavit contradicting his prior deposition testimony with the purpose of manufacturing an issue of material fact and thereby defeating summary judgment. *Id.* at 578. "Thus, factual issues created solely by an affidavit crafted to oppose a

summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y.C. Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

Particularly applicable here is the Seventh Circuit's decision in *Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999). There, the plaintiff sued Honda after a car accident, alleging the seatbelt in his vehicle was defective. One issue that arose in the case was whether the seatbelt detached during the crash or remained buckled. *Id.* at 753. One of the EMT's who was on the scene testified in her deposition that she did not remember whether the plaintiff's lap belt was still attached when she reached him. *Id.* at 759–60. In opposition to summary judgment, the plaintiff filed a new affidavit from the same EMT stating definitively that the plaintiff's lap belt was not still attached. *Id.* at 760. The Seventh Circuit held that the definitive affidavit could not overcome the earlier deposition testimony that the witness did not remember the relevant facts. Quoting from its earlier holding in *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206 (7th Cir. 1993), which involved a similarly unexplained refreshed recollection of a fact that had been forgotten in a deposition, the Seventh Circuit held that "'a party cannot claim a lack of general knowledge about a subject and later make a statement which requires detailed knowledge about the same subject.'" *Clark*, 192 F.3d at 760.

This holding applies equally to the present case in which Kennedy's affidavit denies he ran a red light in contradiction of his earlier testimony at his deposition that he has no recollection of whether he even encountered any red lights. In sum, for reasons explained above, I decline to consider the challenged statements in Kennedy's affidavit. This leaves only the uncontradicted testimony of the police officers, which establishes that the stop of Kennedy's car, based on his failure to stop at a red light, did not constitute a violation of the Fourth Amendment.

### b. The subsequent arrest

The undisputed facts demonstrate probable cause for the arrest, which is a complete defense to a § 1983 claim for false arrest.[1] Kennedy admits to having had three or four drinks the night of the arrest and to telling the arresting officers that he had been drinking. Kennedy Aff. ¶¶ 5, 27. The fact that the police officers saw him run a red light and his admission that he had been drinking was alone sufficient for them to form an objectively reasonable belief that he had committed the offenses of driving while intoxicated and failing to stop for a red light. While Kennedy maintains that he told the arresting officers that he had not had any alcohol for several hours and was therefore no longer intoxicated, they were under no duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002); *see also Jocks v. Tavernier*, 316 F.3d 128, 135–36 (no duty to "investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest"). In any event, even if probable cause was lacking to justify his arrest for driving while intoxicated, there was a sufficient basis for his arrest for running a red light.

Moreover, any alleged impropriety with respect to the legality of the initial stop does affect the subsequent arrest, for which Kennedy's admissions supplied probable cause. In *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), the Second Circuit held that at § 1983 plaintiff can only seek damages for an actionable violation of the Constitution and the injuries directly or proximately caused by the violation. *Id.* at 145. In that case, the plaintiff was riding in a taxi which was stopped and searched. *Id.* at 141. The search uncovered handguns and cocaine, for which the plaintiff was prosecuted and incarcerated. *Id.* The plaintiff sued, alleging

---

[1] Plaintiff's claim for failure to intervene fails because it is derived from the alleged unconstitutional stop and arrest. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (holding liability precluded for failure to intervene where arresting officers committed no constitutional infringement).

5

that the stop and search of the taxi was unconstitutional and sought damages for his conviction and incarceration. *Id.* The Second Circuit's decision in *Townes* proceeded in two parts.

To start, it held that there is no equivalent to the "fruit of the poisonous tree" doctrine in civil § 1983 actions, *i.e.*, that the question was not whether the constitutional violation was the "but for" cause of the plaintiff's damages. *Id.* at 145. Instead, the *Townes* court found that plaintiffs in § 1983 cases must show that any subsequent harms were "proximately caused" by the initial misconduct and that there were no superseding causes of the injury, using traditional principles of tort law. *See id.* at 146.

Under traditional principles of tort law, the term "proximate cause" is often conflated with the issue whether the harm to the plaintiff was a "foreseeable consequence" of the defendant's conduct. In the last edition of the *Law of Torts* that was written by Dean Prosser before his death, he addressed the difficulties inherent in defining the term "proximate cause" in the context of determining the liability of the defendant for his own negligence. After a lengthy discussion of the issue, he observed that "the conclusion may well be drawn that, while there are still rearguard actions, and cases that do not fit, the 'scope of the foreseeable risk' is on its way to ultimate victory as the criterion of what is 'proximate,' if it has not already achieved it." William L. Prosser, *Law of Torts* 267 (4th ed. 1971). While Prosser is also critical of the utility of the term "foreseeable risk," *id.*, the term seems particularly useful in the present context which deals with the foreseeability of the consequences of the stop and not whether the defendants were negligent.[2]

---

[2] One case that Prosser cites defines the term "foreseeable risk" as encompassing "all the consequences which a prudent and experienced person, fully acquainted with the circumstances which in fact existed . . . would at the time of the negligent act have thought reasonably possible if they had occurred to his mind." Prosser, *Law of Torts* 268 n.63 (quoting *Butts v. Anthis*, 73 P.2d 843, 844–45 (Okla. 1937)) (alterations in the original); *see also* Restatement (Second) of Torts § 435(2) (2012) (containing a somewhat different definition, of which Prosser is also critical).

Accepting Kennedy's version of the facts, the police officer stopped him without any reason to believe that he was driving while intoxicated or that he had committed any other traffic infraction. Any evidence they found as a result of that stop was therefore not a foreseeable consequence of the stop. On the other hand, if the testimony of the police officers is credited, there would be no basis for precluding them from relying on any evidence they found, even if the discovery of such evidence was foreseeable.

Plaintiff fares no better under the second part of the *Townes* holding, which was that "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims *cannot* be compensated for injuries that result from the discovery of incriminating evidence and the consequent criminal prosecution." *Id.* at 148 (emphasis added). A plaintiff whose initial, illegal stop led to the discovery of incriminating evidence may only recover damages for the initial stop and associated seizure, which would "at most support slight or nominal damages." *Id.* at 145; *accord Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) ("We agree with *Townes*: . . . victims of unreasonable searches . . . cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.") (internal quotation marks omitted).

Here, Kennedy alleges a cause of action for violation of the Fourth Amendment and another for false arrest. Compl. ¶¶ 40, 42–43. Under the second part of the *Townes* analysis, even if his cause of action relating to the initial stop was to go forward, he would be able to recover only the nominal damages arising from the minor invasion of privacy occasioned by the stop of his car. His subsequent arrest was clearly supported by probable cause and therefore caused no damages for which he could recover. *See Townes*, 176 F.3d at 149 ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest . . . ."); *cf. Cyrus v. City of New York*, 450 Fed. App'x 24, 26 (2d Cir. 2011) (assuming initial arrest unlawful,

evidence discovered incident to arrest admissible to support probable cause defense in the subsequent § 1983 action). *Machado v. Weare Police Dept.*, 494 Fed. App'x 102, 104–07 (1st Cir. 2012) (even assuming initial stop of vehicle was illegal, discovery of drugs during search provided "ample" probable cause to justify arrest).

**II.    Malicious Prosecution**

To prevail in an action for malicious prosecution the plaintiff must show: (1) the initiation of an action by the defendant against him, (2) with malice, (3) without probable cause, and (4) that the action terminated in his favor. *See Swartz v. Insonga*, 704 F.3d 105, 111–12 (2d Cir. 2013). The plaintiff must also be subject to some manner of continuing seizure upon his release from custody. *Id.* at 112. While the Second Circuit's cases on this issue are hardly a seamless web, *compare Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (obligation to appear in court in response to a pre-arraignment summons not a seizure) *with Swartz*, 704 F.3d at 112 (describing *Burg*'s discussion of the issue as "dictum" and holding the obligation to appear in criminal proceeding was a sufficient deprivation of liberty), the most recent case, which I am bound to follow, holds that a post-arraignment obligation to answer criminal charges and several court appearances are a sufficient deprivation of liberty. *Swartz*, 704 F.3d at 112; *cf. Burg*, 591 F.3d at 98 (number of appearances "may bear" upon whether there was a sufficient deprivation).

Kennedy testified that he made many appearances before the charges against him were dismissed on speedy trial grounds. This constitutes a termination in favor of the criminal defendant under New York law. *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417–18 (2d Cir. 1999) (citing *Murphy*, 118 F.3d 938 (2d Cir. 1997)). Nevertheless, the malicious prosecution claim fails because there was probable cause to initiate a prosecution. *See D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 396 (S.D.N.Y. 2007) (well-established that a finding of probable cause defeats a claim for malicious prosecution).

### III. Dismissal of Remaining Claims

In his opposition brief, Kennedy stated his intent to dismiss his claims against all defendants except Anthony Carreira, Thomas Kulka, and the City of New York, and his fifth through ninth causes of action against all parties. *See* Pl. Br. at 2. Though neither party has addressed this issue in detail, defendants argue that those claims should be dismissed with prejudice. I agree. A unilateral motion to dismiss an action without prejudice is permissible only before the defendant has filed an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1). Because Kennedy no longer has the ability to unilaterally withdraw his claims, the claims can be dismissed "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "The theory underlying this limitation is that, after the defendant has become actively engaged in the defense of a suit, he is entitled to have the case adjudicated and it cannot, therefore, be terminated without either his consent, permission of the court, or a dismissal with prejudice that assures him against the renewal of hostilities." *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979).

Here, the factors considered in deciding whether to dismiss with prejudice weigh in favor of defendants. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) (setting out factors). The case has been pending for more than two years, and the arrest complained of happened more than five years ago. The parties have undertaken significant discovery and would incur significant expense in relitigation. Moreover, plaintiff has set forth no showing of the need to dismiss at this stage or the desirability of litigating the other claims in a different forum or at a later point in time. In light of the governing legal standards, those claims are unlikely to be successful. Accordingly, they are dismissed with prejudice.

## CONCLUSION

The defendants' motion for summary judgment is granted on all claims except those which plaintiff has asked to withdraw, which are dismissed with prejudice.

**SO ORDERED.**

Brooklyn, New York
July 10, 2013

s/
Edward R. Korman
Senior United States District Judge